## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**CHRISTOPHER TYLER**

      **Petitioner**

**v.**                             **Civil Action No. 2:20-cv-00494**
                                          **(Criminal No. 2:19-cr-00082)**

**UNITED STATES OF AMERICA**

      **Respondent**

### SWORN AFFIDAVIT OF DEFENSE COUNSEL

I, Lorena E. Litten, Assistant Federal Public Defender, do hereby affirm to the truth of the following matters pertaining to my previous representation of the Petitioner, Christopher Tyler, and submit this affidavit in response to this Court's September 21, 2020 Order pertaining to Mr. Tyler's allegations of ineffective assistance of counsel.[1]

I.  **Summary of Case**

Christopher Tyler was charged by complaint on January 2, 2019, with distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1), after he allegedly distributed a controlled substance to a confidential informant. Dkt. No. 1. Soon after counsel was appointed, the United States made it clear that there was more to this case than this original charge. AUSA Monica Coleman informed me over

---

[1] All references made to the CM-ECF docket are for filings made in the original criminal case (2:19-cr-00082).

the phone, prior to the detention hearing held in this matter, that she had "substantial" evidence linking Mr. Tyler to an overdose death.

I subsequently learned, through informal discovery, that Mr. Tyler had allegedly distributed a controlled substance to V.D. on the night of August 29, 2018, the night before V.D. was found deceased in bed. There were text messages between Mr. Tyler and V.D. which implicated Mr. Tyler as having distributed a controlled substance to V.D. on the night of August 29. On August 29, 2018, V.D. sent Mr. Tyler a message indicating possession of "some monies," and he responded that he had some "dopeski." V.D. indicated the intent to call him in an hour or so, and to appear at Mr. Tyler's residence at nine. V.D. later sent a text confirming arrival at Mr. Tyler's residence. The two continued to communicate via text message throughout the night, until approximately 1:33 a.m. Previously, on August 27, the two had discussed V.D. purchasing "boy" from Mr. Tyler; "boy" being a slang term for heroin. Mr. Tyler had also warned V.D. to "take baby steps with that" because the heroin was "really good." Testing performed on V.D.'s blood indicated the presence of fentanyl, acetyl fentanyl, and mitragynine in V.D.'s system.

After reviewing the discovery with Mr. Tyler, I engaged in lengthy plea negotiations with AUSA Monica Coleman on Mr. Tyler's behalf. The United States originally proposed offering a plea agreement which would include Mr. Tyler pleading guilty to an information charging him with distributing a quantity of fentanyl to V.D. on August 29, 2018, in violation of 21 U.S.C. § 841(a)(1), and agreeing to offense level 38 under USSG §2D1.1(a)(2). §2D1.1(a)(2) states that offense level 38 applies

> if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A),
> (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or
> (b)(3), and the offense of conviction establishes that death
> or serious bodily injury resulted from the use of the
> substance.

I maintained, based on my research, that §2D1.1(a)(2) would not apply because that enhancement only applies if the death is established by the offense of conviction. *See United States v. Lawler*, 818 F.3d 281 (7th Cir. 2016). Mr. Tyler's plea to distribution would only establish that he distributed fentanyl to V.D. – not that this distribution resulted in V.D.'s death.

This proposal was not made as a formal plea offer. After our discussions regarding the appropriate offense level, on February 20, 2019, AUSA Coleman offered a plea agreement which included a plea to the same offense, but with a guideline agreement to a base offense level of 24 (based on the total weight of drugs), a 2-point enhancement for possession of a firearm, and a 12-point enhancement pursuant to USSG §5K2.1 (death occurring during an offense). See unexecuted plea agreement, dated February 20, 2019, attached as Exhibit A. After receiving that written offer, I indicated to AUSA Coleman that I did not believe this plea agreement was fair in that Mr. Tyler would be subjected to the same offense level (38) as if he had been convicted of distribution resulting in death. I met with Mr. Tyler and discussed this with him, and he ultimately rejected the February 20, 2019 plea agreement. See letter dated February 22, 2019, attached as Exhibit B.

The last and final plea offer made by the United States was one which agreed to an offense level of 24, plus an enhancement for possession of a firearm, with a

reservation of the rights of both parties to argue their respective positions with regard to an upward departure under §5K2.1. Dkt. No. 26. Mr. Tyler agreed to this plea offer and signed the agreement on March 21, 2019. *Id.* On April 3, 2019, pursuant to that plea agreement, he entered a plea of guilty to an information charging him with distributing a quantity of fentanyl and acetyl fentanyl to V.D. Dkt. No. 27.

Sometime following Mr. Tyler's guilty plea, I received from the United States a report authored by Dr. Stacey Hail, with a written opinion regarding what caused the death of V.D. The conclusion of that report was that Dr. Hail could not state that the fentanyl and acetyl fentanyl, which Mr. Tyler admitted to distributing to V.D., was a "but for" cause of V.D.'s death, due to the presence of mitragynine. However, Dr. Hail was of the opinion that the fentanyl and acetyl fentanyl was the most likely cause of V.D.'s death.

Mr. Tyler's presentence report ("PSR") included a statement that "[p]ursuant to U.S.S.G. §5K2.1, if death resulted, the court may increase the sentence above the authorized guideline range." The United States lodged an objection to the PSR noting that it was the position of the United States that the enhancement should apply and that Mr. Tyler should be sentenced above the guideline range. The United States specifically requested that Mr. Tyler be sentenced within the guideline range for offense level 38. In the Sentencing Memorandum that I filed, I specifically addressed the United States' request for an upward departure and objected to the same, arguing that 1) offense level 38 was clearly inappropriate because V.D.'s death was not established by the offense of conviction, 2) the government's own expert could not

4

conclude that the drugs Mr. Tyler distributed to V.D. were a "but for" cause of VD.'s death, and 3) an upward departure was inappropriate when considering the factors outlined in §5K2.1. Dkt. No. 32.

The sentencing hearing of this matter was nearly three hours long.  The main reason for this extended period of time was the testimony of Dr. Hail regarding her findings with respect to the cause of V.D.'s death.  She testified consistent with her report that she could not find that the fentanyl and acetyl fentanyl Mr. Tyler sold V.D. was the cause of V.D.'s death, due to the presence of mitragynine.  Despite that, she believed the fentanyl and acetyl fentanyl was the most likely cause of V.D.'s death.

Although offense level 38 (pursuant to USSG §2D1.1 (a)(2)) did not apply in this case, the United States still sought for Mr. Tyler to be sentenced at that guideline range, which would have been 235 to 294 months (but would have been capped at 240 months due to the statutory maximum of twenty years), or 168 to 210 months with credit for acceptance of responsibility (total offense level 35).  Consistent with my sentencing memorandum, I argued that this would be wholly inappropriate as it would be applying the same offense level Mr. Tyler would be subjected to if he were convicted of causing V.D.'s death, which he was not. I argued that any upward departure would not be appropriate in this case, due to the factors outlined in §5K2.1, as well as Mr. Tyler's background and personal characteristics, such as his upbringing, early exposure to drug distribution, and his substance abuse addiction.

In the end, Mr. Tyler was sentenced to 135 months, after Judge Faber applied an eight-level upward departure to offense level 31, due to the death of V.D.

II.   **Mr. Tyler's Specific Grounds**

> **Ground No. 1**: *Counsel was egregiously ineffective for failing to file the Notice of Appeal requested by the Petitioner.*

Mr. Tyler alleges that counsel "refused" to file a Notice of Appeal of the Judgment entered on September 10, 2019. This allegation is not true. Following the disposition in this case, Mr. Tyler contacted me via telephone and notified me that he was interested in filing an appeal. I subsequently visited Mr. Tyler in person at South Central Regional Jail on September 12, 2019 to discuss the potential risks associated with filing an appeal.

First, Mr. Tyler's plea agreement contained an appeal waiver which would bar him from appealing any sentence he received so long as that sentence was below the statutory maximum sentence. Dkt. No. 26 at ¶ 11. As Mr. Tyler was sentenced to 135 months, well below the statutory maximum sentence, he had waived any right to appeal that particular sentence; therefore, any appeal would have most likely been dismissed before ever reaching the merits.

Second, I advised Mr. Tyler that I did not believe any grounds existed upon which to successfully appeal his conviction, because I believed that Judge Faber had complete authority, pursuant to § 5K2.1, to depart upward from the guideline range based on the death of V.D. The only argument would have been that the sentence was substantively unreasonable, which I did not feel had any real chance of success.

Third, and most importantly, I discussed with Mr. Tyler my fear that, should he file an appeal, the United States might deem that as a violation of the plea agreement and seek to withdraw from it. It was my fear that the United States would then be able to charge Mr. Tyler with distribution resulting in death, which carries a mandatory minimum sentence of twenty years. 21 U.S.C. § 841(b)(1)(C). The Fourth Circuit indicated in the case *United States v. Poindexter* that, when a defendant files an appeal despite agreeing to an appeal waiver in his plea agreement, one of the remedies available to the United States is to seek to withdraw from the plea agreement, due to the defendant breaching the plea agreement by filing the appeal. 492 F.3d 263, 271 (4th Cir. 2007). The Third Circuit has found a defendant to have breached a plea agreement by filing an appeal when his plea agreement contained an appeal waiver provision. *United States v. Erwin*, 765 F.3d 219 (3d Cir. 2014). Whether the United States would attempt to take such an action was unknown, but the United States had been aggressive in its prosecution of the case, there was little to be gained by filing an appeal, and the potential ramifications for Mr. Tyler's sentencing exposure were significant.

After discussing all of these things, Mr. Tyler agreed with me that it would not be wise to file an appeal, and indicated that he no longer wished for me to file it. I followed up this meeting with a letter to Mr. Tyler confirming the content of this conversation. *See* letter to Mr. Tyler, dated September 23, 2019, attached as Exhibit C. Contrary to Mr. Tyler's assertion, at no point did I simply refuse to file a Notice of Appeal on his behalf. Rather, I gave my best advice to Mr. Tyler, based on my legal

7

training and experience, as well as my reading of *Poindexter*. After considering my advice, Mr. Tyler made his own decision not to move forward with an appeal.

> **Ground No. 2**: *Counsel was egregiously ineffective for failing to object to the enhancement for relevant conduct.*

Here Mr. Tyler alleges that counsel failed to object to the court imposing an enhancement under 21 U.S.C. § 841(b)(1)(C). In doing so, Mr. Tyler has mistakenly conflated the enhanced sentencing provisions under 21 U.S.C. § 841(b)(1)(C) for distribution resulting in death with the provision in the United States Sentencing Guidelines allowing for an upward departure when a death occurs pursuant to §5K2.1. Mr. Tyler's sentence was not enhanced under 21 U.S.C. § 841(b)(1)(C). Indeed, in that respect, Mr. Tyler is correct – in order for Mr. Tyler to be subjected to an enhanced penalty under § 841(b)(1)(C), there would have to have been a finding that the drugs distributed by Mr. Tyler were a "but for" cause of V.D.'s death. Moreover, this fact would have to have been found by a jury at trial, or admitted by Mr. Tyler as part of a plea to § 841(b)(1)(C). This, of course, did not happen. Mr. Tyler was not convicted of distribution resulting in death, and therefore was not subjected to the enhanced penalty (twenty years to life in prison). Rather, Judge Faber departed upward pursuant to U.S.S.G. §5K2.1 from his original guideline range of 57 to 71 months and imposed a sentence of 135 months.

Throughout plea negotiations, it became apparent that the Government and I had conflicting opinions regarding the application of U.S.S.G. §2D1.1(a)(2). Absent any on-point case law from the Fourth Circuit, I expanded my research to include cases from other circuits. The case which was most on point regarding this issue was

8

*United States v. Lawler*, which held that "[w]e join the Third, Fifth, and Sixth Circuits in holding that § 2D1.1(a)(2) applies only when a resulting death . . . was an element of the crime of conviction, proven beyond a reasonable doubt or admitted by the defendant." 818 F.3d 281, 285 (7th Cir. 2016).

However, that very case also explicitly stated that "[n]othing we say today prevents a sentencing court, when determining a defendant's ultimate sentence, from considering the fact that death resulted." *Id.*   I also considered the following – 18 U.S.C. § 3553(a)(1) directs courts to consider 'the nature and circumstances of the offense'; 18 U.S.C. § 3553(a)(5) directs courts to consider the Sentencing Commission's policy statements; and the policy statement of U.S.S.G. § 5K2.1 which advises that '[i]f death resulted, the court may increase the sentence above the authorized guideline range')." After considering these facts, I concluded that Judge Faber had the authority to impose an enhancement based on §5K2.1.

Nevertheless, as discussed above, I argued there was insufficient evidence to justify an upward departure, both in the sentencing memorandum that I filed on Mr. Tyler's behalf, as well as at the sentencing hearing.  I argued that an upward departure was inappropriate when considering the factors outlined in §5K2.1 in conjunction with Mr. Tyler's personal characteristics and background.  I also argued that, even if the court was inclined to impose an upward departure, the court should decline to impose a sentence within the range the United States was asking for – 235 to 240 months (offense level 38, with a maximum penalty of twenty years under statute), or 168 to 210 months with credit for acceptance of responsibility (offense

level 35).  This would be the sentencing range which would apply to Mr. Tyler if he were found *guilty beyond a reasonable doubt* of distribution resulting in death, which he was not.  Therefore, I contended that it would have been wholly inappropriate for the court to sentence Mr. Tyler at this offense level.

## III.    Conclusion

Having addressed the issues raised by Movant in his Motion under 28 U.S.C. § 2255, Undersigned Counsel concludes her affidavit.

Respectfully submitted this the 21st day of October, 2020.

Lorena E. Litten, Bar No. 12226
Assistant Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, WV 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail:  lorena_litten@fd.org