IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHRISTOPHER TYLER,

    Movant,

v.                                                       Case No. 2:20-cv-00494
                                                       Case No. 2:19-cr-00082

UNITED STATES OF AMERICA,

    Respondent.

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 44). This matter is assigned to the Honorable David A. Faber, Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

**RELEVANT PROCEDURAL HISTORY**

**A.    Defendant's indictment and guilty plea.**

On January 2, 2019, Christopher Tyler (hereinafter "Defendant") was charged by federal complaint with knowingly and intentionally distributing a controlled substance in violation of 21 U.S.C. §§ 841(a)(1). (ECF No. 3). Defendant was subsequently arrested on the complaint and Assistant Federal Public Defender Lorena E. Litten ("Litten") was appointed to represent him. (ECF No. 11).

Preliminary and detention hearings were held before the undersigned on January 8, 2019. (ECF No. 13). Discovery evidence demonstrated that Defendant had allegedly

distributed a controlled substance to V.D. on the night of August 29, 2018, the night before V.D. was found deceased in bed. A few days before her death, the two had discussed V.D. purchasing "boy" (a slang term for heroin) from Defendant. On August 29, 2018, V.D. sent Defendant a text message indicating possession of "some monies," and he responded that he had some "dopeski." V.D. indicated that she would call Defendant in about an hour and would appear at Defendant's residence at nine. V.D. later sent a text confirming her arrival at Defendant's residence. The two continued to communicate via text message throughout the night, until approximately 1:33 a.m. Defendant warned V.D. to "take baby steps with that" because the heroin was "really good." Post-mortem blood tests indicated the presence of fentanyl, acetyl fentanyl, and mitragynine in V.D.'s system. (ECF No. 41 at 5-6; ECF No. 53 at 2).

According to Litten's affidavit, after discovery was provided, extensive plea negotiations ensued, with significant debate over the application of the enhanced sentencing provisions for distribution of a controlled substance resulting in death in sections 2D1.1(a)(2) and 5K2.1 of the United States Sentencing Guidelines ("USSG"). (ECF No. 53 at 2-3). On March 11, 2019, the United States tendered a revised plea agreement to Litten by which Defendant would plead guilty to an information charging him with distributing a quantity of fentanyl to V.D. on August 29, 2018, in violation of 21 U.S.C. § 841(a)(1), with an agreed guideline base offense level of 24, plus an enhancement for possession of a firearm under USSG § 2D1.1(b)(1), but reserving the right for each side to argue its position concerning the application of USSG § 5K2.1. (ECF No. 26). After reviewing it with Litten, Defendant agreed to enter into the plea agreement. (ECF No. 53 at 3-4). Defendant acknowledged his review by initialing each numbered paragraph of the agreement, and both he and Litten signed the plea agreement. (ECF No. 26).

On April 3, 2019, Defendant appeared before Senior United States District Judge David A. Faber and entered a plea of guilty to a violation of 21 U.S.C. § 841(a)(1) pursuant to the written plea agreement. (ECF Nos. 23, 24). During the plea hearing, the Court inquired of Defendant about his understanding of the plea agreement, the maximum sentence to which he was exposed thereunder, and the various constitutional, trial, and appellate rights waived by his guilty plea and the terms of the agreement, which included a stipulation of relevant facts and an appellate waiver. (*Id.*) The Court determined that Defendant entered his plea freely and voluntarily, and it was supported by an independent factual basis. (*Id.*)

**B.   Sentencing.**

The United States Probation Office prepared a presentence investigation report ("PSR") which included a statement that "[p]ursuant to U.S.S.G. § 5K2.1, if death resulted, the court may increase the sentence above the authorized guideline range." On July 16, 2019, Defendant filed his objections to the PSR. (ECF No. 30). Sentencing memoranda were filed by both parties. (ECF No. 31 and 32). In his memorandum, Defendant objected to any sentencing departure under USSG § 5K2.1. (ECF No. 32). The government argued for an upward departure to offense level 38. (ECF No. 31 at 6-7). The final PSR was submitted on July 30, 2019. (ECF No. 41). Based upon a total offense level of 33 and a criminal history category of I, Defendant's proposed advisory guideline range of imprisonment was 46-57 months. (*Id.*)

Defendant's sentencing occurred on August 6, 2019. (ECF No. 35). Among other witnesses, the government presented the expert testimony of Dr. Stacey Hail, a medical toxicologist from Dallas, Texas. (ECF No. 52 at 60-97). Dr. Hail testified that V.D. suffered an "opioid death." (*Id.* at 80). However, because of the presence of mitragynine

3

in V.D.'s system, she could not opine that the fentanyl or acetyl fentanyl V.D. had consumed was an "independently sufficient" or "but-for" cause of her death. (*Id.* at 86-87). Nonetheless, Dr. Hail believed it was more likely than not that the fentanyl substances were the cause of her death. (*Id.*) The Court determined Defendant's total offense level to be 23 with a criminal history category of I, resulting in a guideline sentencing range of 46-57 months. (ECF No. 40 at 1; ECF No. 52 at 107). However, following zealous argument by counsel, the Court determined that the circumstances surrounding V.D.'s death warranted an eight-level upward departure under USSG § 5K2.1, resulting in a total offense level of 31, and a guideline range of 108-135 months in prison. (ECF No. 40 at 2; ECF No. 52 at 101, 119). The Court ultimately sentenced Defendant to 135 months of incarceration, followed by a three-year term of supervised release. (ECF No. 38; ECF No. 52 at 120).

After the sentencing hearing, Litten informed Defendant of the risks involved with challenging his sentence on appeal, largely due to the appellate waiver contained in his plea agreement. (ECF No. 26 at 6; ECF No. 53 at 6-8). According to Litten's affidavit, Defendant agreed and decided not to seek an appeal. (ECF No. 53 at 6-7). Thereafter, Litten followed up by letter dated September 23, 2019 confirming her advice and Defendant's decision not to appeal. (ECF No. 53, Ex. C).

### C. Motion to vacate sentence pursuant to 28 U.S.C. § 2255.

On July 21, 2020, Defendant filed the instant § 2255 motion asserting the following grounds for relief: (1) Litten failed to file a Notice of Appeal after he requested her to do so; and (2) Litten failed to properly object to the application of the sentencing enhancement under § 5K2.1. (ECF No. 45 at 1). On October 21, 2020, as ordered by the

4

Court, Litten filed an affidavit addressing Defendant's claims of ineffective assistance of counsel. (ECF No. 53).

Litten's affidavit asserts that Defendant has mistakenly conflated the enhanced sentencing provisions under 21 U.S.C. § 841(b)(1)(C) and USSG § 2D1.1(a)(2) for distribution resulting in death with the sentencing guideline provision in § 5K2.1 allowing for an upward departure when a death occurs.[1] (ECF No. 53 at 8). As the Court recognized at sentencing, Defendant was not charged with facts to support the enhanced statutory penalty, and his sentence was not enhanced under 21 U.S.C. § 841(b)(1)(C) and USSG §2D1.1(a)(2). (ECF No. 52 at 98; ECF No. 53 at 8). Litten further states that, given an absence of relevant case law in the Fourth Circuit, she relied on the Seventh Circuit's decision in *United States v. Lawler*, which held that "[w]e join the Third, Fifth, and Sixth Circuits in holding that § 2D1.1(a)(2) applies only when a resulting death . . . was an element of the crime of conviction, proven beyond a reasonable doubt or admitted by the defendant." 818 F.3d 281, 285 (7th Cir. 2016). As noted by Litten, *Lawler* further states "[n]othing we say today prevents a sentencing court, when determining a defendant's ultimate sentence, from considering the fact that death resulted." *Id.* (ECF No. 53 at 8-9).

Litten's affidavit indicates that Defendant was faced with the report and testimony of Dr. Hail opining that, although, due to the presence of mitragynine, she could not state that the fentanyl and acetyl fentanyl, which Defendant admitted to distributing to V.D.,

---

[1] Where death or serious bodily injury is proven beyond a reasonable doubt to have resulted from the use of the controlled substance, a defendant shall be sentenced to an enhanced term of imprisonment of 20 years to life, among other increased penalties. 21 U.S.C. § 841(b)(1)(C). In conjunction with this statutory enhancement, pursuant to USSG § 2D1.1(a)(2), the defendant would be subject to a base offense level of 38. Here, although the § 841(b)(1)(C) and USSG § 2D1.1(a)(2) enhancements were not applied by the Court, the government sought an equivalent enhancement under USSG § 5K2.1.

5

was a "but-for" cause of her death (such that the enhancement under 21 U.S.C. § 841(b)(1)(C) and USSG § 2D1.1(a)(2) would not apply), she nonetheless believed that the fentanyl and acetyl fentanyl was the most likely cause of V.D.'s death. Thus, Litten recognized that the Court had authority to consider a guideline enhancement under § 5K2.1, but aggressively argued that such an enhancement was not warranted under the circumstances. (*Id.*)

Litten further states that, considering the § 3553(a) factors and the policy statement of § 5K2.1 which advises that "[i]f death resulted, the court may increase the sentence above the authorized guideline range," she concluded that Judge Faber had the authority to impose an enhancement under § 5K2.1, but, nonetheless, she argued that there was insufficient evidence to justify any such a departure. (*Id.* at 9-10). While her argument was ultimately unsuccessful, she convinced the court to impose a lesser enhancement than that proposed by the government, which would have been equivalent to the statutory enhancement requiring "but-for" causation. (*Id.*)

Concerning the failure to file an appeal, Litten stated that she met with Defendant to discuss the merits of pursuing an appeal. Litten did not believe there were any meritorious grounds for appellate relief and, given the aggressive prosecution of the case by the government, she strategically advised against filing an appeal. (*Id.* at 6-7). Her affidavit states:

> Contrary to Mr. Tyler's assertion, at no point did I simply refuse to file a Notice of Appeal on his behalf. Rather, I gave my best advice to Mr. Tyler, based on my legal training and experience, as well as my reading of [*United States v. Poindexter*, 492 F.3d 263, 271 (4th Cir. 2007)].[2] After considering my advice, Mr. Tyler made his own decision not to move forward with an appeal.

---

[2] In *Poindexter*, the Fourth Circuit held that a defendant who files an appeal despite agreeing to an appeal waiver in his plea agreement, breaches the agreement and one of the remedies available to the United States is to seek to withdraw therefrom.

6

(ECF No. 53 at 7). Litten's advice and Defendant's decision are memorialized in her September 23, 2019 letter to Defendant. (ECF No. 53, Ex. C).

On November 24, 2020, the government filed a response to Defendant's § 2255 motion asserting that he has failed to demonstrate that Litten provided ineffective assistance of counsel or that he is otherwise entitled to any relief under § 2255. (ECF No. 54). Specifically, the response asserts that, because Defendant was sentenced below the applicable statutory maximum, he waived his right to appeal and Litten thoroughly and properly advised him of the risks associated with filing an appeal in violation of the waiver. (*Id.* at 8-9). Defendant agreed with that advice and decided not to appeal. (*Id.* at 9). Thus, the government asserts that Defendant cannot demonstrate that Litten's conduct fell below an objective standard of reasonableness or that he suffered undue prejudice from her advice. (*Id.*)

The government further contends that Defendant's assertion that Litten ineffectively challenged the sentencing enhancement for the victim's death is unsupported by the record because Litten did object to the enhancement and thoroughly litigated the issue through written submissions, interrogation, and argument at the sentencing hearing. (*Id.* at 9-10). Its response further asserts:

> Attorney Litten took every opportunity available to object to and argue against the sentencing enhancement. Although the Court ultimately determined that an enhancement pursuant to § 5K2.1 was appropriate, the strategy Attorney Litten pursued was one that would be used by other competent attorneys. Furthermore, Attorney Litten's strategy was successful to the extent that she persuaded the judge not to vary upwards to offense level 38, which the United States argued was the appropriate offense level. ECF No. 31 at 6-7.

(*Id.* at 10). Thus, the government contends that Litten's performance was not deficient, and Defendant has not established ineffective assistance of counsel under *Strickland*. (*Id.*) Defendant did not file a reply brief. This matter is ripe for resolution.

## **ANALYSIS**

I. *Enhancement under USSG § 5K2.1*

At the outset, as noted by Litten's affidavit, it appears that Defendant has improperly confused or conflated the statutory enhancement under 21 U.S.C. § 841(b)(1)(C) with the guideline enhancement under USSG § 5K2.1. Defendant's § 2255 motion relies on the Supreme Court's decision in *Burrage v. United States*, in which the Court found that, for the statutory enhancement to apply, the fentanyl supplied by Defendant must have been an "independently sufficient" or "but-for" cause of the victim's death, and such causation must be proved beyond a reasonable doubt to a jury or admitted by the defendant. 571 U.S. 204, 218-19 (2014) ("at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury."). Defendant's motion asserts:

> Here, as in *Burrage*, the expert witness refused to testify to the "but-for" requirement for enhancement under 21 U.S.C. § 841(b)(1)(C). Thus, counsel was egregiously ineffective and the conviction and sentence should be vacated and the [Defendant] resentenced minus the enhancement.

(ECF No. 45 at 3). However, because Defendant was not charged with or sentenced under the § 841 enhancement, *Burrage* does not apply to his case.

On the other hand, a federal court may impose a sentence outside the applicable guideline range if the court determines by a preponderance of the evidence "'that there

8

exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into account by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *United States v. Scheetz*, 293 F.3d 175, 190 (4th Cir. 2002) (quoting USSG § 5K2.0 (internal quotation omitted)); *see also United States v. Dixon*, 318 F.3d 585, 588 (4th Cir. 2003). (ECF No. 54 at 11). In formulating such a departure, the court must determine that there are factors that "fall outside the heartland of cases in the Guideline." *Scheetz*, 293 F.3d at 191 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)).

Pursuant to USSG § 5K2.1, if death resulted from the defendant's conduct, the court may increase the sentence above the authorized guideline range. Unlike the statutory enhancement, however, the conduct of the defendant does not have to be a "but-for" cause of the death. Rather, in determining the extent of the increase under § 5K2.1, the court may consider "[the] dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction, as determined by the other Chapter Two guidelines, already reflects the risk of personal injury." *See* USSG § 5K2.1.

As noted by the government's brief, in *United States v. Rybicki*, 96 F.3d 754 (4th Cir. 1996), the Court established a five-step analysis to be used by district courts in deciding whether to depart from an applicable sentencing guideline. (ECF No. 54 at 12-14). First, the district court must determine the circumstances and consequences of the offense of conviction. This is a factual inquiry, which is reviewed only for clear error. *Rybicki*, 96 F.3d at 757. Second, the court must find that the circumstances and consequences are atypical, removing it from the heartland of the applicable guidelines. This is an analytical determination and not subject to appellate review. *Id.* Third, the

court must classify each factor into one of four categories – forbidden for departure, encouraged basis for departure, discouraged basis for departure, or unmentioned basis for departure. *Id.* Fourth, the court must inquire whether the guidelines already account for the factor. If they have not, and the factor is encouraged, the factor is usually an appropriate one for departure. *Koon*, 518 U.S. at 94-95. Finally, the court must determine that a departure is warranted and reasonable. *Rybicki*, at 758; *see also United States v. Terry*, 142 F.3d 702, 707 (4th Cir. 1998). The Fourth Circuit reviews the ultimate departure decision for abuse of discretion and any factual determinations underlying the decision for clear error. *Rybicki*, 96 F.3d at 758. (ECF No. 54 at 12-14).

Here, as argued by the government, the Court appropriately applied the *Rybicki* factors for departure. (*Id.* at 13-14). Defendant's conduct clearly played a significant role in the death of V.D., where he knowingly and intentionally distributed a substance to V.D. that he knew to be dangerous. At sentencing, the Court considered text messages between Defendant and V.D. warning her that the substance he sold her was strong and could be harmful. Defendant again reached out to V.D. after selling her the fentanyl and acetyl fentanyl mixture to check on her. The Court also credited the testimony of Dr. Hail, who opined that it was more likely than not that V.D.'s death resulted from the drugs Defendant sold her. Based on these factors, the Court properly found a departure of eight levels was necessary, but sufficiently constrained, to achieve deterrence, just punishment, promote respect for the law, incapacitate Defendant from further crimes, and provide rehabilitation. (ECF No. 52 at 118-20; ECF No. 54 at 13-14).

II.     *Defendant's ineffective assistance of counsel claims*

The Supreme Court addressed the right to effective assistance of counsel as guaranteed by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668 (1984),

10

in which the Court adopted a two-pronged test. The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness. *Id*. at 687-91. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. *Id*. at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id*. at 690. This inquiry is directed at whether defense counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The question is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id*. at 88.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The Court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. *Id*. at 697. Using this standard, the undersigned will address each of Defendant's claims of ineffective assistance of counsel.

11

Defendant's § 2255 motion asserts that Litten provided ineffective assistance of counsel by not properly challenging the enhancement based upon the victim's death at sentencing and then not filing a direct appeal. However, Defendant fails to demonstrate that Litten's representation fell below an objective standard of reasonableness. Because Defendant has not met his burden of showing that Litten's representation was unreasonable, the prejudice prong need not be addressed.

### A. The failure to file an appeal was not constitutionally ineffective.

There are two scenarios in which the Supreme Court has recognized ineffective assistance of counsel for failure to file a direct appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470 (2000). First, when an attorney "disregards specific instructions from the defendant to file a notice of appeal," it is *per se* ineffective. *Id.* at 483; *see also United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir.2007) (holding that "an attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a timely notice of appeal even though the defendant may have waived his right to challenge his conviction and sentence in [a] plea agreement").

A defendant may also successfully assert ineffective assistance of counsel with respect to the failure to file a direct appeal where the record does not demonstrate any clear instructions by the defendant. That scenario turns on whether counsel properly consulted with the defendant about the appeal. *Flores-Ortega*, 528 U.S. at 477-78; *see also United States v. Fuentes*, No. 7:12-cv-080539; 7:11-cr-00046, 2014 WL 1159658 at *10 (W.D. Va. Mar. 20, 2014). If counsel did not consult with the defendant, then the court must determine whether such failure, in and of itself, was deficient performance. *Id.*

Here, Defendant expressly waived his right to appeal in his plea agreement, which contains a specific provision outlining waiver of appeal and collateral attack. (ECF No. 26 at 6). The provision states in pertinent part:

> Mr. Tyler knowingly and voluntarily waives the right to seek appellate review of his conviction and of any sentence of imprisonment, fine or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742, except that the defendant may appeal any sentence of imprisonment that exceeds the maximum penalty prescribed by statute. Mr. Tyler also knowingly and voluntarily waives any right to seek appellate review of any claim or argument that (1) the statute of conviction [21 U.S.C. §841(a)(1)] is unconstitutional, and (2) Mr. Tyler's conduct set forth in the Stipulations of Facts (Plea Agreement Exhibit B) does not fall within the scope of 21 U.S.C. § 841(a)(1)).

(ECF No. 31 at 5). As Defendant's sentence did not exceed the statutory maximum, his right to appeal was waived by this provision.

According to Litten's affidavit, following the sentencing hearing, she discussed Defendant's appeal rights with him both over the telephone and in person. (ECF No. 53 at 6). She explained to Defendant that, because his sentence did not exceed the statutory maximum as stated in the appeal waiver, he was prohibited from filing an appeal. (*Id.*) She further explained the possible consequences of filing an appeal – namely, that (1) the appeal would most likely be dismissed because of the waiver; and (2) Defendant risked having the plea agreement set aside for breach of the agreement, potentially exposing him to additional or increased charges. (*Id.* at 6-7). Based upon this discussion, Litten contends that Defendant decided not to file an appeal. (*Id.* at 7). She then followed up on their discussion in writing, sending Defendant a letter dated September 23, 2019, in which she summarized her position and Defendant's decision not to pursue an appeal. (ECF No. 53, Ex. C). As Defendant has not demonstrated that Litten ignored a specific request to file an appeal, he fails to show ineffective assistance of counsel.

### B.     Litten's handling of the "death" sentencing enhancement was not ineffective.

As noted by the government's brief, Defendant's allegation that Litten was ineffective for failing to object to his enhanced sentence is factually inaccurate because Litten did, in fact, object to the "death" sentencing enhancement. (ECF No. 54 at 9). Moreover, the record indicates that this issue was thoroughly litigated through sentencing memoranda and at a lengthy sentencing hearing. (*Id.*). The government asserts that "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). (*Id.* at 9-10).

The record demonstrates that Litten challenged the sentencing enhancement on several separate occasions. First, she filed a written sentencing memorandum objecting to any sentencing enhancement under § 5K2.1. (ECF No. 32). She also raised objections to the enhancement at the sentencing hearing. (ECF No. 35; ECF No. 52 at 98-100). During the extensive sentencing hearing, Litten rigorously cross examined the government's witnesses, including the medical expert, to elicit testimony favorable to Defendant. (ECF No. 52 at 55-59, 88-93, 97). She then zealously argued against the § 5K2.1 enhancement, emphasizing Defendant's background, remorse, lack of criminal history, and his own drug addiction stemming from a prior physical injury. (*Id.* at 98-99, 108-13). Although the Court ultimately determined that an enhancement under § 5K2.1 was appropriate, Litten's strategy was successful to the extent that she persuaded the judge not to vary upwards to offense level 38, as argued by the government. (ECF No. 31 at 6-7; ECF No. 52 at 97-98, 100-01).

The undersigned agrees that Litten took every opportunity available to object to and soundly argue against the "death" sentencing enhancement and did not act outside an objective standard of reasonableness with respect to her representation throughout Defendant's criminal proceedings or in not filing an appeal therefrom. Thus, Defendant has failed to meet the first prong of deficient performance under *Strickland* and his claims of ineffective assistance of counsel lack merit. Therefore, he has not demonstrated that his sentence was imposed in violation of the Constitution or laws of the United States, that the Court was without jurisdiction to impose his sentence, or that his sentence exceeds the maximum authorized by law. Accordingly, he is not entitled to any relief under 28 U.S.C. § 2255.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 44) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and

Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Judge Faber.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Defendant and to transmit a copy to counsel of record.

July 21, 2023

Dwane L. Tinsley
United States Magistrate Judge